IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JAMES P. ERLANDSON,**

**Plaintiff,**

**v.**

**CONOCOPHILLIPS CO. and,**
**BURLINGTON RESOURCES, INC.,**

**Defendants.**                                              **No. 09-99-DRH**

### MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

      Plaintiff James P. Erlandson brought this breach of contract suit, seeking to recover a retention bonus in the amount of $115,373 from his former employer Burlington Resources, Inc (Burlington) who merged with ConocoPhillips Company (ConocoPhillips) (collectively defendants). Both parties moved for summary judgment. For the reasons that follow, plaintiff's motion for summary judgment (Doc. 74) is denied, and defendants' motion for summary judgment (Doc. 76) is granted.

### I. Background

At issue in this case is whether plaintiff is entitled to a retention bonus offered to him at or around the time Burlington and ConocoPhillips merged together in 2006. Prior to the merger, plaintiff was employed by Burlington as an engineer, earning an annual salary plus any money he earned in bonuses through Burlington's annual

"incentive compensation plan." Under this plan, at the beginning of each year, a bonus target percentage was established, and Burlington had discretion to award bonuses that were up to 150% of the bonus target percentage, that would be paid to the employee during February of the following year. While Burlington had discretion to pay bonuses in amounts more or less than the target bonus opportunity, depending on a number of factors, the target bonus opportunity percentage did not change unless an employee's job grade level changed. In 2006, plaintiff's target bonus opportunity percentage was thirty percent of plaintiff's annual salary.

ConocoPhillips also offered its employees a bonus program, which ConocoPhillips referred to as the "variable cash incentive program" or VCIP. Like the incentive compensation plan at Burlington, ConocoPhillips company personnel established bonus target percentages at the beginning of each year that varied by the grade levels of employees. Unlike the Burlington incentive compensation plan, however, ConocoPhillips management had discretion to award bonuses that were up to 250% of the bonus target percentage. Both bonus programs used different standards for determining the amount of bonus to be given.

One day prior to the merger, on March 31, 2006, Burlington sent plaintiff a retention letter (the "retention letter") acknowledging that Burlington had entered into a merger with ConocoPhillips and providing the following relevant information:

> This Retention Letter provides that, on the first anniversary of the effective time of the Merger (the "Payment Date"), you will receive a cash payment of $115,373 (the "Retention Bonus"), subject to your

>continued employment with [Burlington] (or any of its affiliates) through the Payment Date.
>
>Notwithstanding the foregoing, in the event that, prior to the Payment Date, April 1, 2007, your employment with the Company and its affiliates is terminated (A) without Cause or (B) by reason of your death or permanent disability or (y) you resign from the Company and its affiliates for Good Reason, you shall be paid the Retention Bonus within (10) days following the date of such termination of employment.  If, however, at any time prior to the Payment Date, you resign from the Company and its affiliates without Good Reason or your employment with the Company and its affiliates is terminated for Cause, you will immediately forfeit any then-unpaid portion of your Retention Bonus.

The retention letter further provided that it would be "governed by, and construed in accordance with, the laws of the State of Texas, without reference to its conflict of law rules," and asked plaintiff to sign and return a copy within ten days following receipt.  Exhibit A attached to the letter defined "Good Reason" to mean"without your prior written consent, (i) the relocation of your place of employment by more than 50 miles,(ii) any reduction in your annual rate of base salary from your annual rate of base salary in effect on the date hereof, or (iii) any reduction in your target bonus opportunity percentage from your target bonus opportunity percentage in effect on the date hereof."  The next day, ConocoPhillips and Burlington merged.

A few days later, on April 3, 2006, ConocoPhillips sent a continuation of employment letter (the "continuation letter") to plaintiff, confirming plaintiff's continuation of employment with ConocoPhillips, and informing plaintiff that Burlington's compensation programs will transition into ConocoPhillips programs

over the next 18 months to two years.  The letter also contained the following relevant information:

> **2006 Compensation**
> Monthly Salary:            $9,615.00
>
> In no event will your base salary be lower than your current level as of March 1, 2006.  You will have received your 2005 bonus and 2006 equity awards prior to the merger.  Additionally, Burlington Resources will pay your 2006 bonus 30 days after closing and this will be full and final payment of the 2006 bonus under the Burlington Resources Incentive Compensation Plan.
>
> **Future Compensation Structure**
> It is ConocoPhillips intent to move all employees to ConocoPhillips compensation structure as soon as practical.  For your grade level the compensation structure will be:
>
> > COP Salary Grade Level:     16
> > Monthly Salary:             $9,615.00
> > (Subject to annual salary adjustment effective March 1 of each year)
> > Target Annual VCIP Award: 10.0% of annual eligible earnings
> > (Based upon performance, payout can range from 0-250% of target, Burlington Resources was capped at 150%)
> > . . . .
> - ConocoPhillips information of the Variable Cash Incentive Program (VCIP) and Restricted Stock Units (RSU) has been provided for informational purposes only.  Since your 2006 equity and bonus awards have already been made or will be made shortly after the merger as set forth above, you will not be participating in these ConocoPhillips programs until 2007.
>
> . . . .
> Later this year, you will receive comprehensive information on the 2007 compensation and benefits program for which you will be eligible. . . .

Plaintiff signed and returned the retention letter on April 11, 2006.  Several months later after continuing to work for defendants, on August 2, 2006, plaintiff sent ConocoPhillips a letter announcing his resignation effective August 16, 2006,

stating that his "resignation shall be executed with 'Good Cause' as defined" by the retention letter. In the letter, plaintiff wrote that "[p]rior to the buyout of [Burlington] by ConocoPhillips, my annual target bonus percentage was 30% of annual eligible earnings. However, the Continuation of Employment Letter shows my Target Annual VCIP Award level at 10% of annual eligible earnings." On September 12, 2006, ConcocoPhillips sent plaintiff a letter notifying him that his claim for a retention bonus had been denied.

On December 4, 2008, plaintiff, an Illinois citizen, filed this suit as a class action complaint in Madison County, Illinois circuit court. Defendants, Delaware corporations with their principle places of business in Texas, removed this suit to this Court on the basis of diversity jurisdiction. See 28 U.S.C. § 1332(d)(2)(A). Plaintiff moved to certify the class, but the Court found class certification to be improper, and the Seventh Circuit denied plaintiff's request for permission to appeal under Federal Rule of Civil Procedure 23(f). (Docs. 58 & 68). Thereafter, plaintiff filed a motion for summary judgment (Docs. 74 & 75), followed by defendants (Docs. 76 & 77). Thus, the only claim at issue is plaintiff's. For the reasons that follow, plaintiff's motion is denied (Doc. 74) and defendants' is granted (Doc. 76).

## II.  Standard of Review

In a diversity case, the Court applies state law to substantive issues. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). Federal law governs procedure. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010).

When neither party raises a conflict of law issue in a diversity case, as is the case here, the applicable law is that of the state in which the federal court sits. *Id.* Thus, Illinois law applies. Under Illinois choice of law rules, however, litigants can stipulate to which substantive law applies to their case so long as the stipulation is reasonable. *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 n. 6 (7th Cir. 1995). The retention letter here provides that Texas law will govern and both parties cite to Texas law in their briefs. Thus, the Court will apply Texas law to substantive issues and federal law to procedural issues.

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The fact that both

parties moved for summary judgment does not change the standard of review. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 539 (7th Cir. 2011).

Under Texas law, the elements of a breach of contract claim are: (1) a valid contract; (2) performance or tendered performance; (3) breach of contract; and (4) damages resulting from the breach. *Myan Mgmt. Group, L.L.C. v. Adam Sparks Family Revocable Trust*, 292 S.W.3d 750, 754-55 (Tex. Ct. App. 2009). "Contract language should be interpreted by a court as a matter of law if it can be given a certain or definite meaning. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010). "If the contract is ambiguous, the party's intent is a question of fact for the jury." *Id.* "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation, and admit extraneous evidence to determine the true meaning of the instrument. *Id.* "Whether a party has breached a contract is a question of law for the court, not a question of fact for the jury, when the facts of the parties' conduct are undisputed or conclusively established." *Grohman,* 318 S.W.3d at 887. "The court's primary concern when construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument." *Id.* The court "must examine and consider the entire writing 'in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'" *Id.* (quoting

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)).

### III.  Analysis

Here, the parties do not dispute that a valid contract exists, i.e., the retention letter became a contract when plaintiff signed the letter and continued his employment with defendants, but rather dispute whether there was a breach of that contract.  The Court first must determine whether as a matter of law the contract is ambiguous.  A plain reading of the contract reveals only one reasonable interpretation of the contract and therefore the Court finds the contract to be unambiguous.

In sum and as is relevant to here, the contract provides that plaintiff would be entitled to a retention bonus of $115,373 on April 1, 2007 "subject to [plaintiff's] continued employment with [Burlington] (or any of its affiliates) through" April 1, 2007, unless plaintiff resigned "for Good Reason," i.e., unless plaintiff had "any reduction in [his] target bonus opportunity percentage from [his] target bonus opportunity percentage in effect" in March 2006.  See *Grohman*, 318 S.W.3d at 887 ("The Agreement's definition of Collateral guides our interpretation of these provisions.").  Accordingly, the Court must first determine whether plaintiff had any reduction in his target bonus opportunity percentage.

Plaintiff basis his argument that there was a reduction on the continuation letter.  Plaintiff contends that the continuation letter informed plaintiff that his VCIP target "will be" ten percent for his job grade level, but that amount was less than the thirty percent he had in effect with Burlington on March 31, 2006.

Defendants contend that continuation letter did not constitute an actual reduction in plaintiff's 2007 bonus opportunities and that the continuation letter clearly stated that the compensation data included in the letter was "for information purposes only" and that the two companies' compensation programs would be integrated over an eighteen month period.  Furthermore, defendants aver that the retention letter explicitly defines "Good reason" as "any reduction in your target bonus opportunity percentage" – not a "possible reduction" or "potential reduction."   Defendants also argue that even if the continuation letter triggered a right to resign, plaintiff's breach of contract claim fails as a matter of law because plaintiff's admissions establish that he did not, in fact, resign "for good reason" within the meaning of his retention letter, but rather resigned to pursue a higher paying job.  The Court agrees with defendants' reasoning.

The retention letter clearly contemplated that plaintiff actually receive a reduction in his target bonus opportunity percentage, but plaintiff resigned well before that determination could be made.  The continuation letter sent to plaintiff set forth that Burlington's compensation programs would transition into ConocoPhillips programs over the course of the next eighteen months to two years.  While the letter indicated that plaintiff's future compensation structure would have a target annual variable cash incentive program award of ten percent of eligible annual earnings based upon performance with a payout range from 0 to 250% of target, the letter also indicated this information had been "provided for information purposes only," and that "[l]ater this year, you will receive

comprehensive information on the 2007 compensation and benefits program for which you will be eligible . . . ." See *Southwell v. Univ. of the Incarnate Word*, 974 S.W.2d 351, 356 (Tex. App. Ct. 1998) (finding that the statement "for informational purposes only" clearly evidenced a lack of intent by the university to be bound by the terms of the bulletin). Moreover, the letter indicated that the earliest this change would take affect would be in 2007. Rather than wait to see what plaintiff's target bonus opportunity percentage would be, however, plaintiff resigned effective August 16, 2006. Thus, plaintiff never received "any reduction in [his] target bonus opportunity percentage from [his] target bonus opportunity percentage in effect" in March 2006. As a result, plaintiff's claim fails and summary judgment is entered in favor of defendants.

As to plaintiff's contention that his interpretation of the contract is the only interpretation supported by the only available parol evidence to aid the Court, i.e., that the two signatories to the contract – plaintiff and Burlington's executive vice president, Randy Limbacher – have always shared the interpretation urged by plaintiff, that argument fails. "Parol evidence is not admissible for the purpose of creating an ambiguity." *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520; *Progressive Cnty. Mutual Ins. Co. v. Kelley*, 284 S.W.3d 805, 807 (Tex. 2009) ("Extrinsic evidence is not admissible for the purpose of creating an ambiguity."); *Sacks v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) ("An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which

its language imports."). And even if this evidence was admissible, the parol evidence in this case establishes that the reason plaintiff resigned was because he took a higher paying position with another company, not for "good reason" as that term is defined in the retention contract. In fact, plaintiff indicated in his exit interview that the reason he was leaving the company was for monetary reasons and an opportunity to work for a start-up company. Ergo, plaintiff's argument misses the mark.

### IV. Conclusion

For the reasons stated above, plaintiff's motion for summary judgment (Doc. 74) is denied, and defendants' motion for summary judgment (Doc. 76) is granted. The Clerk is ordered to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 30th day of December, 2011.

David R. Herndon
2011.12.30
09:14:58 -06'00'

**Chief Judge**
**United States District Court**